IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

J.R., a minor, by and through her parent and Guardian ad Litem, S. RINGER, and O.G., a minor, by and through his parent and Guardian ad Litem, A. VALDENEGRO,

    Plaintiffs,

  v.

LAKEPORT UNIFIED SCHOOL DISTRICT; KELSEYVILLE UNIFIED SCHOOL DISTRICT; and DOES 1 through 50, inclusive,

    Defendants.

No. C 18-06211 WHA

**ORDER GRANTING PETITIONS FOR SETTLEMENT OF MINORS' CLAIMS**

## INTRODUCTION

Two minor plaintiffs petition through their *guardians ad litem* for their settlements to be approved. To the extent stated herein, plaintiffs' petitions are **GRANTED**.

## STATEMENT

This case stems from the sexual assault of two minors. Prior orders have detailed the facts alleged in the complaint (Dkt. Nos. 53, 62). In brief, a student with a history of severe behavioral problems, "Bully," sexually assaulted a student with special needs, plaintiff O.G., repeatedly at a middle school in the Lakeport Unified School District. Plaintiff O.G.'s mother informed the school of the assault, removed plaintiff O.G. from the school, and placed plaintiff O.G. in a different middle school in the Kelseyville Unified School District. Plaintiff O.G.'s

mother allegedly told the school in Kelseyville the reason plaintiff O.G. had transferred and the name of Bully from Lakeport. Plaintiff O.G. thrived in his new school. The following year, Bully sexually assaulted plaintiff J.R. in Lakeport. The school suspended Bully. He then eventually transferred to the same school in Kelseyville where plaintiff O.G. attended. Bully taunted and again sexually assaulted plaintiff O.G.

This lawsuit followed. Through their *guardians ad litem*, plaintiffs O.G. and J.R. initiated this lawsuit on August 24, 2017, in state court in the County of Lake. In October 2018, defendant Kelseyville Unified School District removed here (Dkt. No. 1). Following Rule 12 practice, an order stayed plaintiffs' state law claims because a legal question existed as to whether plaintiffs' state law claims would be barred under *Big Oak Flat-Groveland Unified School District v. Superior Court*, 21 Cal. App. 5th 403 (2018), *vacated with direction to reconsider*, 444 P.3d 665 (Cal. 2019). In brief, the California Court of Appeal will determine whether plaintiffs were required to comply with Lakeport Unified School District's claim presentation requirement pursuant to Section 935(a) of the California Government Code prior to filing suit. If the California Court of Appeal answers this question in the affirmative, plaintiffs' state law claims will be barred.

Only one federal claim survived Rule 12 practice, a claim under Title IX alleged against both Kelseyville and Lakeport Unified School Districts.

The parties have now settled all claims. Plaintiff J.R. has filed a petition for approval to receive $25,000 from defendant Lakeport and zero dollars from defendant Kelseyville (J.R. never attended any school in Kelseyville). Plaintiff O.G. has filed a petition for approval to receive $50,000 from defendant Lakeport and $60,000 from defendant Kelseyville. Plaintiff O.G.'s *guardian ad litem*, A. Valdenegro, further requests that $17,553 of plaintiff O.G.'s settlement recovery be given directly to her "to assist [p]laintiff O.G. with educational endeavors and developmental disabilities" (Dkt. No. 98 at 5). Plaintiffs' counsel also seek 25% of each settlement plus expenses. After attorney's fees and expenses, the total net recovery for plaintiff J.R. is $18,209.43; the total net recovery for plaintiff O.G. is $81,939.62. This order follows briefing, supplemental submissions, and oral argument.

**ANALYSIS**

When a plaintiff under eighteen settles federal claims, a district court must " 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.' " *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (*quoting Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). The district judge must "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1081–82. Importantly, the district judge should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel — whose interests the district court has no special duty to safeguard." *Id*. at 1182 (*citing Dacanay*, 573 F.2d at 1078). This holding is expressly limited to federal claims. *Id*. at 1179 n.2.

Both federal and state law claims are proposed for settlement here. Our court of appeals has never decided how such a mishmash of claims should be resolved. Other judges in this district have taken the claims together and applied the standard for federal claims. *See, e.g.*, *Parenti v. Cty. of Monterey*, No. 14-cv-05481-BLF, 2019 WL 1245145 (N.D. Cal. Mar. 18, 2019) (Judge Beth Labson Freeman); *Doe ex rel. Scott v. Gill*, Nos. C 11-4759, 11-5009, 11-5083 CW, 2012 WL 1939612 (N.D. Cal. May 29, 2012) (Judge Claudia Wilken). This order applies the aforementioned standard to all claims.

This order finds that the proposed settlements are adequate because of the significant risk that there will be no recovery in this case. *First*, the state law claims remain stayed because plaintiffs' state law claims may yet be barred completely. The risk that plaintiffs will never recover on these claims remains. *Second*, as to the lone federal claim at issue here, under Title IX, plaintiffs must show that defendants had actual knowledge and acted with deliberate indifference. These elements will be hard to prove on the facts herein, if the parties are to be believed. These representations will now be shown in detail.

### 1. PLAINTIFF J.R.

Plaintiff J.R. admitted in deposition that Bully never said anything sexual or profane to her. He would sometimes hug her, but she never reported any of these hugs. Five times, Bully's hand briefly brushed against her bottom when he walked behind her. Bully also rubbed his fist on the top of J.R.'s head approximately five times during science class. Once, Bully's hand brushed across J.R.'s breasts as the two of them walked past each other. J.R. advised the school of the brush against her breast, the school suspended Bully, and he never returned to school with J.R. She has since remained a "straight A" student, and attended therapy no more than "a few times" in 2019 (Barron Decl. ¶ 5) (Dkt. No. 108).

J.R. testified that none of the touches involved lingering or squeezing, none involved skin to skin contact, and, although the complaint alleged that Bully touched J.R.'s genitals, J.R. testified that she did not recall Bully ever doing so.

The parties have not provided examples of recovery in similar cases. Plaintiff's counsel admit: "while this is a very modest settlement for this type of case, J.R. did not have the evidence to support a higher settlement at the time of the [mandatory settlement conference]" (*ibid.*).

In light of the facts available and the very real risk of zero recovery if these claims continue to be litigated, J.R.'s net recovery of $18,209.43 is sufficiently adequate.

### 2. PLAINTIFF O.G.

As to plaintiff O.G., discovery developed facts that are more severe. Specifically, plaintiff O.G. testified that Bully kissed his neck in a bathroom stall in January 2015, grabbed his genitalia one week later in another bathroom stall, then a short time thereafter, anally penetrated him. O.G. testified to other instances of Bully touching O.G.'s genitalia over O.G.'s clothes.

Discovery, however, yielded more. O.G.'s therapist testified that much of the facts testified to herein were not the version of the facts O.G. had previously shared with her. Rather, what O.G. had described to her was consistent with "sexual experimentation." He had described the events to her as voluntary and something that "felt good." O.G.'s therapist also

testified that O.G.'s parents had caused the majority of the emotional problems here because they, and their church, did not approve of the homosexual conduct which had occurred. The therapist discharged O.G. from counseling over one year ago and explained that approximately 85% of the problems she had been treating O.G. for had been resolved. She does not foresee psychological problems in the future. Her testimony is apparently supported by her records taken in real time.

Perhaps O.G. can overcome his therapist's testimony. But perhaps in connection with O.G.'s significant developmental disabilities and communication challenges, he also constantly shifted his story. This might lead to credibility issues at trial.

To this end, at trial, Lakeport's employees will testify that O.G.'s disabilities manifested into apparent fantasies, and that O.G.'s version of events are not true. Lakeport had five para-educators assigned to watch specific areas during all recesses and lunch periods, two of whom were posted within eyeshot of the bathroom entrance at all times during all recesses and lunch. These para-educators were instructed to watch for children going into the bathroom together and/or for too long a period of time, and radios were frequently used to advise the other employees of problems in the bathrooms. None of these employees purportedly ever saw O.G. and Bully: (1) touch the other; (2) enter or leave the bathroom together; (3) remain in the bathroom for more time than would be expected; or (4) exit the bathroom looking frightened or under otherwise suspicious circumstances. To the contrary, Lakeport will testify that the two spent time together in class talking and laughing together. In addition, O.G. himself testified that he and Bully were friends. No Lakeport employee ever saw Bully physically touch or bully other children.

Finally, O.G.'s mother gave notice to Lakeport on the last day of school. O.G. never returned to school after the notice. So, showing that Lakeport had actual notice of Bully's behavior may not be straightforward.

In light of all this evidence and testimony, it may be understandable that plaintiff O.G. (and his parents) would prefer to not have their credibility questioned in open court, particularly when Lakeport might not have acted with "actual notice" or "deliberate indifference." That

plaintiff O.G's parents therefore prefer to accept the approximate net $37,000 from Lakeport and call it a day, in light of the evidence and the continued risk of litigation, is understandable. The settlement with Lakeport is sufficiently adequate.

With respect to Kelseyville, plaintiff O.G. reported Bully's sexual assaults to Kelseyville, and the school district still put plaintiff O.G. and Bully in the same school. Kelseyville disputes some of the specifics of what was said. Kelseyville also disputes that Bully physically touched plaintiff O.G. at Kelseyville. For his part, plaintiff O.G. has testified to only a single instance of Bully touching him at Kelseyville. Specifically, plaintiff O.G. testified that on the basketball court, in full view of other students, Bully grabbed plaintiff O.G.'s genitalia. This, too, shifted from the complaint which had alleged that Bully had "poke[d O.G.] in his anus" (Dkt. No. 22 ¶ 40). In any event, not a single witness has ever come forward to verify this public assault. Furthermore, Bully and plaintiff O.G. attended school together in Kelseyville for only four days. In light of these facts, the settlement amount of approximately $44,000, is also sufficiently adequate.

Plaintiff O.G.'s net recovery of $81,939.62 is sufficiently adequate.

### 3. REQUEST FOR IMMEDIATE RELEASE OF FUNDS.

Plaintiff O.G. turns eighteen on March 3, 2020. Plaintiff's mother seeks $17,553 to be immediately released, including $14,550 for a used 2014 Honda Civic. At the hearing, it came to light that this used car would actually cost $17,335.40. This is an exorbitant amount for a used car. Nevertheless, in light of the representations made at the hearing that this car would be used to drive plaintiff O.G. to school and to doctor's appointments, the request to immediately release $17,335.40 is **GRANTED**. The other requests are **DENIED**.

### CONCLUSION

Based on the foregoing, plaintiff O.G. and plaintiff J.R.'s requests for approval of a minor's compromise is **GRANTED**. The parties shall file a stipulated dismissal pursuant to Rule 41(a)(1)(A)(ii), by next **WEDNESDAY AT NOON**.

Within fifteen days after receipt of her settlement funds from defendants, plaintiff J.R.'s guardian shall file proof that **$18,209.43** was deposited into a blocked account with a federally

insured bank for the benefit of J.R. and that J.R. can access the account when she reaches the age of majority. Even after plaintiff J.R. reaches the age of majority, these funds may only be withdrawn upon an order from this Court.

Also within fifteen days after receipt of his settlement funds from defendants, plaintiff O.G.'s guardian shall file proof that **$81,939.62** was deposited into a blocked account with a federally insured bank for the benefit of O.G. and that O.G. can access the account when he reaches the age of majority. Even after plaintiff O.G. reaches the age of majority, these funds may only be withdrawn upon an order from this Court. **$17,335.40** of the **$81,939.62** may be immediately released to plaintiff O.G.'s *guardian ad litem* for the specific purchase of a used 2014 Honda Civic so that plaintiff O.G. may be driven to school and to doctor's appointments.

Plaintiffs' counsel shall also receive **$33,389.62** in attorney's fees and **$1,441.53** in expenses as reimbursement for their litigation expenses, all to be paid from both settlements. An additional **$19.80** shall be given to counsel, and then paid immediately to Medi-Cal to cover plaintiff O.G.'s outstanding medical expense. Half of the fees and all the expenses shall be paid immediately. The other half of the fees must remain in counsel's client trust account until counsel certify with this Court that all funds have been *properly* distributed and the file can be completely closed. Counsel shall please continue their work to ensure distribution goes smoothly.

**IT IS SO ORDERED.**

Dated: November 21, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7